Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good morning. We have four appeals that are scheduled for oral argument this morning on the court's oral argument calendar. Judge Rosenbaum, Judge Hopkins and I are ready to proceed with the as the timekeeper. She will let you know, counsel, when your time to argue has expired. She will also provide you with a two-minute warning before your time to argue expires. And so it appears that counsel are ready to proceed with their arguments. The first appeal is the United States v. Lillian Akwuba. Leanne Webster is here for the appellant. Akwuba and Megan Kirkpatrick is here for the United States. And Ms. Webster, are you ready to proceed with your argument? I am, your honor, yes. Thank you. Good morning and may it please the court. Unless this court would prefer otherwise, I intended to focus this morning on the first issue, that the district court improperly instructed the jury that the records provided to Ms. Akwuba were complete and part of the second issue that the district court aired by preventing Ms. Akwuba from cross-examining Dr. Kaufman about changing his opinion after reviewing additional records. This court should vacate Ms. Akwuba's convictions for both of these reasons. To understand the importance of these issues, I think it's necessary to provide some factual background. Specifically, at trial, the government relied on experts to make its case to the jury. And those experts' opinions were based on medical records that they reviewed. And the government never introduced any testimony from patients or any witnesses who were present during an examination. So the entire case was premised on medical records. And the major issue at trial, or the major defense at trial, was that these records were incomplete. Ms. Akwuba insisted that there were handwritten T-sheets that contained relevant information and that she filled out during the examinations and that these T-sheets likely would have or could have changed the experts' opinions. Because the experts never had access to those T-sheets, their opinions therefore were not valid. Therefore, Ms. Akwuba's defense at trial was that the government's case was premised on incomplete records because those handwritten T-sheets had not been provided either to the experts or to the jury. What difference would it make, what difference would the T-sheets being given to the experts make to the evidence, would seem to be overwhelming. And particularly to the evidence of one of the witnesses who said that she worked there and she saw the defendant forge physician signatures under the documents. That has nothing to do with T-sheets, does it? I think that we should be clear that there are two different practices at issue and the testimony about the forge prescription was related to the second practice, Mercy Family, and it was only related to a particular subset of prescriptions that were at issue. So you're not saying even if we agreed with you to a T on the jury instruction issue, it would invalidate all accounts? That's not your position? No, I think it is our position, your honor. So if a witness is credited by the jury as to having seen the defendant forge prescription names, forge doctor's names on prescriptions, that you would still be entitled to a reversible because the experts didn't know about the T-sheets? Yes, your honor. I think that's supported by a number of different cases that have been issued by this court, both sitting as the 11th by the former Fifth Circuit or the Fifth Circuit before it became the 11th Circuit, and I think some Supreme Court cases that have held that when the judge, when the court instructs the jury on a disputed issue of material fact and that amounts to a partial directed verdict and that that sort of error cannot be harmless. Counsel, we're not talking about harmless, we're talking about whether it affects at all or goes to or relates to or is relevant to account in which that was not offered. If I understand the court's question, which is that the T-sheets may not be relevant to the counts that are, for which there were some fraudulent prescriptions presented at trial, I would note first that you've already said I thought that this relates only to one of the, was it three or four collaborative physician places that she had? The instruction related to was specific, I think, to the family practice, which was the first chunk of the indictment. Therefore, it wouldn't have affected the other counts that relate to the other practices, mercy and so forth. I don't agree with that, Your Honor. I think for this reason, specifically because the court instructed the jury that basically her entire defense was invalid, it infected her credibility. It didn't instruct the jury that her entire defense was invalid. And I think that as to the family practice accounts, it instructed the jury that her T-sheets and the experts had access to all the records. Counselor, you're evading my question. You just said if the court instructed the jury as to the family practice counts, I'm asking you what that has to do with the mercy practice. Yes. Sorry, Your Honor. I understand. I think that when the court instructed the jury as to the family practice counts, that affected the jury's view of both of her credibility and her defense counsel's credibility because that was her defense, was that these records were not complete. And so when the judge is essentially telling the jury, no, that thing that she's telling you is not true, that affects her credibility on all of the defense. That could not have been her defense to the count or counts in which people say, I saw her forge physician's names to these prescriptions. You can't have his defense but I had information I was acting on that you don't know about. Yes, Your Honor. I understand that. I'm not saying that that was her defense as to those counts. I think that she denied that that had happened. She denied that that was true. And so because the jury's and the jury instruction that is that issue called her credibility into question and indicated that she and her attorney were not telling the over onto the other accounts that were at issue. And so because the court instructed the jury, something that clearly indicated to the jury that she was not being credible and her defense attorney was not being credible, then that also had an effect on the other counts, including the counts from the family practice or the, I'm sorry, the mercy family counts. Your Honor. So that is why. So did she testify at the trial that she did not forge patient's names on prescriptions? Your Honor, I would have to review her testimony in more detail. I don't believe that she admitted to it, but I can't tell you for certain if she denied that during her testimony at this time, but I can provide that in a 28 J letter if you would prefer. Would there be any other testimony or evidence presented in her defense or through cross examination that she disputes that she forged patient's names on prescriptions? I'm sorry, I did not hear that last part. Other than her own denial, would there be any other evidence at the trial that she could point to? If we look at the transcript of the trial, would there be any other evidence that would oppose that evidence that she forged names, patient's names on prescriptions? Your Honor, I'm sorry. I would not be able to point you to anything at this time, but I can provide that in a 28 J letter if you would like me to. What did her lawyer argue to the jury during the closing argument? Did he argue that she denied that in closing argument? I don't believe that he agreed to any accounts, but I will note that the indictment didn't charge her with fraud with falsifying prescriptions. That's not how the case was charged. I think that was new evidence. I'm not going to say that was new evidence, but it was not how it was charged in the indictment. And so it's unclear to me if that was the basis for the jury's verdict. And so again, I think that was a very small subset of the prescriptions that were at issue. And so you would have to take a very close eye to figuring out to see which counts exactly had prescriptions that the government alleged were falsified. What about the count involving WD's chart? You know, the one I'm talking about, that's the one in which she said he had received or the records she approved said he had received the pelvic exam. There'd been no change in menses, vaginal discharge, no pelvic pain, cervix was normal and so forth and so on. And it turned out, of course, that he was a man that was affected by the jury instruction issue. It was, Your Honor. And that's because I think she never denied, and I don't think that there was any really contest at trial, that the medical records, the electronic records were not accurate. So she did not deny that. And so the problem is that these were pre-populated. They were pre-filled forms. And so the person who was responsible for entering in the records was the irrelevant options. And here, that did not happen. And so that's the problem with relying on these medical records is because they're not giving an accurate insight into what actually happened during the examination. And what actually happened during the examination was what was held on the written paperwork was on the T-sheets. And because she did not have that. So she introduced the T-sheets showing that she didn't perform all these female-specific exams on WD at trial. She never had access to the handwritten T-sheets, Your Honor. They were never provided to her. And so that's the whole issue is that they were never provided to her. And so therefore, they were also never provided to the experts. And so that is why they are incomplete. And that's why the reliance on those electronic medical records was so problematic because they weren't a complete review of her interactions with the patients. I see my time is concluding. So I will reserve the rest for rebuttal. Thank you. All right. Thank you, counsel. We'll hear from Ms. Kirkpatrick on behalf of the United States. Good morning, Your Honor. May it please the court. I will attempt to also respond to the same issues that Ms. Webster is raising. And then I'd be happy to address any other issues the court may have. First, I would like to note that the context of this instruction is there was a document witness who is testifying about what records the Alabama Board of Medical Examiners had subpoenaed from family practice regarding 15 different patients. It turned out that, unfortunately, the witness testified that the exhibits he was looking at had all of the records pertaining to those patients' care, which would include care given by other providers besides Miss Akuba, when, in fact, the exhibits only contained information about Miss Akuba's visits with those patients. When that error became apparent, there's quite a significant amount of discussion in the record about that. You can see his testimony document 549 at 220 through 256. And then outside the presence of the jury, there was some discussion with counsel about how to solve this problem. You can see that at approximately pages 259 through 269. Overnight, the record reflects that the parties met with the witness to try to discover the best way to resolve this issue. They came up with a stipulation essentially saying the records contained in these exhibits are the records relating to Miss Akuba's care of these patients rather than the care of all the providers that saw the patients. The government raised a concern with a Brady implication, the concern being that there might be some suggestion that Miss Akuba did not have access to the records regarding care by other providers. Admittedly, the record is not as precise as might be helpful to the court, but I think looking at the context, you can see this was not an instruction to the jury that all of the records in the universe were in the exhibits or had been provided to Miss Akuba. Merely the context shows that this instruction concerned the documents that the board of medical examiners had received from family practice. I would note as well... Let me ask you this question then, Mr. Kirkpatrick, that part of the instruction that she has a problem with is the last sentence. The court says all of each patient's records from family practice were, however, provided to the defendant in her counsel prior to trial. How do we know that that's true? You mean with respect to the interpretation that I have been put before the court, or are you referring to a Brady question, Your Honor? I guess my question is, how do we know that all of the patient records from family practice were provided to the defendant in her counsel prior to trial? How do we know that that's true? She says that's not true, right? Your Honor, I think there are a couple of different things that might be causing some confusion here. I'm not sure that anyone... I may be mistaken about Miss Webster's position, but I'm not sure that anyone is saying Miss Akuba did not receive the records that came from the board of medical examiners, which would have included documentation of care from other providers. I think there may be some dispute in the record as to whether there are paper T-sheets out there that Miss Akuba had access to. And the record does not show, one, whether those in fact existed, or two, where they are. I can represent to the court that as a matter of practice, our office, when we execute a search warrant at a medical facility, does scan all of the paper documents and turn those over to the defense as a matter of practice. But the court is telling the jury that she stipulated for something, and she says that she did not stipulate for the fact that she received all those records, right? Your Honor, I can see how that would be possible. I would just note that the court is entitled to give instructions that would prevent confusion of the jury, and certainly there might be a confusion for the jury as to exactly what records we're talking about, which was part of the purpose of this instruction. Isn't the court telling the jury or implying to the jury that Miss Akuba is not credible if the court is telling the jury that she stipulated for something and her counsel did not stipulate to it? So I think in context, Your Honor, it makes sense to view this instruction as concerning merely the documents that the Alabama Board of Medical Examiners witness testified about. Looking at the instruction in context, it's clear that the court was instructing the jury about the exhibits, not necessarily about all of the documents in the case. I would note, too, both Dr. Sanchez, who was the government's first witness, testified extensively on cross about the potential existence of paper documents. He specifically said, though, that those paper documents of the providers' encounters with patients were supposed to be put into the electronic medical record. So, although in one sense the paper documents may have provided some additional evidence, the electronic medical record is supposed to be the record of all of a patient's care. There was also testimony from Sherry Akron, who actually worked with Ms. Akuba as a medical assistant, both at family practice and at Mercy Family Health Care. She testified that she would input Ms. Akuba's notes into the system and Ms. Akuba would sign off on those, and there was never any problems with her medical transcription assistance. I would also note, Your Honor, although my friend on the other side has argued that this is akin to that are cited by the appellant deal with elements, not with fact issue. And so, this is not the same thing, for example, as the court instructing the jury, you must find that Ms. Akuba distributed this prescription on this date. It is a factual instruction designed to eliminate confusion. Right, the instruction didn't go to, I would agree with you that the instruction did not go to an element of any of the charges against her. But what the instruction does, it seems to me, is it tells, it questions her credibility. And she testified at the trial. And so, the jury had to determine whether or not she was credible in support of her defense. And so, it seems problematic that the court would instruct the jury on a matter that maybe didn't take place or that she disputes. It just tells the jury that she's not credible. So, Your Honor, a couple of responses to that concern. One, I would note, it is true that defense counsel objected before that was given, before that instruction was given, saying, you know, it's the government's burden, that sort of thing. There was no indication that this would cast doubt on Ms. Akuba's credibility. I would also note, and probably should have noted this before, defense counsel did not actually- If she didn't stipulate to something that the court told the jury that she stipulated to, that didn't affect her credibility? Well, Your Honor, I would again point to the context of this instruction, as well as sort of happened at trial. I think the parties in the court, based on the record, were viewing this as a stipulation and an instruction merely about these particular exhibits, not about all of the documents. Because it wouldn't have just gone to Ms. Akuba's- Counsel, did she or did she not testify before the jury as to whether she got all these records before trial? Ms. Akuba, I do not believe testified about whether she received the records before trial. She did testify that she did her notes on T-sheets. Okay, so the jury wasn't told by the judge's instruction that anything Ms. Akuba testified to was false, was it? That's correct, Your Honor. And in fact, there were a lot of witnesses that testified about these paper notes. Dr. Sanchez, who was the government's first witness, Sherry Akron, who was one of the government's witnesses as well. It was not exactly disputed that there could have been paper notes. The dispute was over really whether that would have made a difference, in the sense that the electronic medical records were supposed to contain all of the items that were in the paper notes. And in fact, there's a reference in our brief to Dr. Odell's examination of a paper T-sheet. He looked at the T-sheet and the electronic record and said it didn't change his opinion. Were all of the patient records from family practice provided to Akuba and her counsel prior to trial? Your Honor, I believe that all of the records in the government's position were turned over to Ms. Akuba. I would note this is the first time, to date, oral argument that there has a Brady claim made. The government would certainly request more of a record to be made than oral argument, but there has never been a Brady dispute that Mr. Skyer did not receive the records from family practice from Mercy. Well, I'm not concerned about whether or not there's a Brady problem. My concern is whether or not it's true or not that all of the patient's records from family practice were provided to defendant and her counsel prior to trial. Yes, Your Honor. I think that was part of the discovery. All of the patient, the 15 patient files from family practice that the medical board witness testified to were all given to Ms. Akuba before trial. And she stipulated to that? Do you mean, did she agree to that instruction? Or do you mean, did she say that she hadn't received the records? Did she agree to having that last sentence a part of the court's instruction? No, Your Honor, although I would note that she did not object after the instruction was actually given to the court. I believe that may be unclear from my brief, and for that I do apologize. The defense certainly objected before the instruction was read outside of the presence of the jury, but defense counsel did not object after it was read to the jury. She objected before it was read to the jury? I'm sorry, Your Honor, I didn't catch your question. She objected to that sentence being included as a part of the court's instruction before it was read to the jury? Before it was read to the jury, yes, Your Honor. Unless there are further questions on this point, I just wanted to make mention of the other issue raised by my friend on the other side regarding the cross-examination of Dr. Coffman. Before we get to that, let me just ask one more additional question about a matter that was discussed during Akubo's initial presentation of the case. There were witnesses at the trial who testified that they saw Akubo forge patients' names on prescriptions. Is that right? Yes, Your Honor, and in fact there was a doctor, oh, I'm sorry. Which charges, which of the counts of the indictment does that evidence support? Yes, Your Honor, so those would go to the Mercy Family Healthcare counts. Those counts, so just for the court's information, at family practice there was basically a conspiracy with Dr. Sanchez and others to issue the prescriptions, so there wasn't a at family practice because Ms. Akubo could get Dr. Sanchez to issue the controlled substance prescriptions. At Mercy Family Healthcare, Ms. Akubo was on her own, and so she needed collaborative physicians that would help supervise her. One of those was Dr. Viplav Sanadi. He came in and testified extensively to the jury, showing them the difference between prescriptions he had written and prescriptions he had not written. He had a specific manner of listing the controlled substances in a specific way that he signed his signature, and he identified several prescriptions in the record, I believe specifically with respect to count 46 or 47. I'll give you a minute warning. Thank you. Did she deny that she forged prescriptions at the trial? I believe so, Your Honor, although I can't provide you a specific citation. I would note as well that there are employees of hers at Mercy Family Practice that said that they saw her at the desk signing other doctors' names, including Dr. Sanadi and Dr. Esondo, on prescriptions. I think with respect to Mercy Family Healthcare, there is certainly plenty of evidence about the forged prescriptions. I would also note, Your Honors, that to the extent that there are concerns about whether Ms. Akubo was able to put on a defense regarding T-sheets and whether the instruction prevented her from doing so, you can see from the record that neither the court nor the parties thought that was the case. There was quite a lot of testimony about these written T-sheets. There was also argument about whether the T-sheets would have changed anything. Dr. Kaufman was asked and did answer that if he were given additional information, he would evaluate it and might change his mind. And the only evidence that was excluded in terms of his cross-examination was impeachment that was unnecessary because he admitted that he could change his mind. Did she testify at the trial that the records were incomplete? So yes, Your Honor. So she was specifically asked by defense counsel what she thought was missing, and she told the jury that she thought her T-sheets were missing, her diagnostic studies were missing, urine drug screens were missing, and various other things were missing. And the jury was entitled to reject that evidence from her or to believe that such evidence would not have made a difference because of all of the other overwhelming evidence in the case. If the court told the jury that Uber was given all the records and she testified that the records were incomplete, then the jury's going to have to assess her credibility, right? I see my time has expired, Your Honor. May I answer? Yes. So I would just point the court to the context of the instruction. The instruction, the thrust of it was to basically say, although the exhibits before you today only concern Ms. Akuba's care of these patients, the records reflecting the other people's care at family practice were given to Ms. Akuba. Don't think it goes to her credibility. I'm sorry? Her entire defense was based on her contention that there were missing records and if the jury had the records that were missing, it might have come to a different conclusion about her guilt or innocence, right? I think that was a large part of her defense. But Your Honor- So if the court tells the jury that she got all the records, you don't find that to be problematic? Your Honor, I think based on the record, it was not, the court was not instructing the jury that Ms. Akuba had all of the records in the universe relating to the care of these patients. I think in the context of the instruction, as well as based on the way the parties conducted the trial, the instruction was about whether she received the rest of the records from the medical board. All right. We have your argument. Thank you, Ms. Akuba. Thank you, Your Honor. Ms. Webster, you reserve some time for rebuttal. Thank you, Your Honor. I just want to echo essentially what you've said, which is that the instruction does not make this sort of more nuanced position that the government is referencing. That is not the instruction that was provided. It says, all of each patient's records from family practice were, however, provided to defendant and her counsel prior to trial. All of each patient's, which is not what she agreed to. And I think it's problematic for the reasons Judge Wilson that you were just referring to. All right. Well, let me just tell you my concern is that I think there was an error on the part of the court, but you're going to have to convince us that the error was not harmless. And so what's your best argument? Right. So I wanted to point the court to this, to the Fifth Circuit decision in Lee, United States v. Lee, 483 F. Second 959. It's a Fifth Circuit case from 1973. And that is also, I think you indicated earlier that some of the other cases were about an element of the offense. And that's not the case in Lee. In that case, a perfume shipment had allegedly entered the United States, and then there was a crime about that perfume. And so, but there was that, whether or not the perfume actually came into the United States was actually disputed between the parties. And the trial court made a comment that appeared to resolve that disputed fact by basically telling the jury, yes, that perfume shipment came in. And so in that case, the Fifth Circuit reversed the conviction and held that it was harmless error analysis. And there the court said, a district court does not have the power to direct a verdict of guilty and instructions deciding a material fact issue as a matter of law are erroneous because they amount to a partial directed verdict of guilty. And I would point the court also to three additional decisions to where the courts have repeatedly held that this is not subject to harmless error analysis. It's the Goetz decision, which was cited extensively in our brief, the G-O-E-T-Z, which involved tax returns. It was the Medina decision, M-E-D-I-N-A, where the court removed a jurisdictional element. And the Edwards decision, where the jury essentially, or the court essentially instructed the jury that a defendant had actually admitted guilt. And so in all of those cases and in the abundance of cases that we've cited in our brief, the courts have held repeatedly and over and over that it doesn't matter how overwhelming the evidence is. It doesn't matter because the jury is, the defendant is entitled under the Sixth Amendment and as a due process right to have the jury make those ultimate decisions. I understand you to say it doesn't matter if it's an element, but in your recitation of those cases, and at least some of them, it sounded to me like it was an element. Jurisdictional element or an element of the crime itself. Now, which one of those cases is the strongest case or if the judge instructs the jury about something that doesn't have to be proven beyond a reasonable doubt by the government, it can't be subject to harmless error. I would point the court to the Edwards decision and again to the Lee decision, Your Honor. Edwards and Levy? Lee, L-E-E. It's 483 F second 959. And in both of those, both of those don't disappoint us when we go there. In both of those, it wasn't an element. It wasn't something the government had to prove. No. Okay. Let me point you specifically to Edwards versus United States. That's from 286 F second 681, 5th Circuit, 1960. And here the court says, despite the strong evidence of guilt, we cannot hold that this erroneous charge was harmless. No matter how conclusive the evidence, the court may not direct a verdict of guilt. While this charge... Counsel, you're giving up your opportunity to respond to our question by changing the subject in your answer. The court doesn't direct a verdict by instructing the jury on something that is not an element of the case. Your Honor, I think that's what this case indicates. Of course it can't be harmless error if the court instructs the jury to enter a guilty verdict or instructs the jury that the defendant is guilty. That's directing a verdict on all the elements of the case. What I'm asking you for, do you have any authority? We'll read all your cases, but do you have any authority that if the judge misinforms the jury about something that is not an element of the case, that the government doesn't have to prove, that's not subject to the harmless error? It can be error, but is it not subject to the harmless error? And if so, which of the cases you've talked about say instructing the jury about a non-element can't be harmless error? Your Honor, I want to be clear that I believe that the cases when they talk about when the court instructs the jury on a disputed issue of fact, that amounts to a partial verdict of guilty. It does if the issue of fact goes to an element, is an element as to the defendant's intent, for example, or as to whether the defendant knew about the agreement, if it's a conspiracy case and all that. But if it has to do with what was provided to the defendant before trial, you have a far more difficult case of saying the judge instructed the jury to find an element of the case. I'm sorry, I just want to give you a chance. That's the problem I have with your position and we'll read out these cases, but that's what I understand other judges may have problem with too. Well, I guess your position is that her entire defense is based on her credibility since she testified at the trial. And when the judge instructs the jury on a matter that affects her credibility and that is an error, that could not be a harmless error. Is that your position? Yes, your honor. I definitely agree with that. Yes. All right. I see that well over. Thank you. All right. Thank you, Ms. Webster and Ms. Kirkpatrick. We'll move to the next case.